IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWDEN NORTH AMERICA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 09-1014 |
| | ) | |
| v. | ) | |
| | ) | |
| ACE PROPERTY & CASUALTY INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| AIR & LIQUID SYSTEMS CORPORATION; AMPCO-PITTSBURGH CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 11-247 |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANZ UNDERWRITERS INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**CONTI, District Judge.**

### Introduction

At the hearing held on November 16, 2011, the court addressed the outstanding motions to dismiss on grounds of forum non conveniens filed by defendants HDI-Gerling Industrie Versicherung AG ("HDI-Gerling") and New Hampshire Insurance Company ("New

Hampshire") (ECF Nos. 283 and 289), seeking to dismiss the claims asserted by Howden North

America, Inc. ("HNA") against those defendants in Civil Action Number 09-1014 (the "2009

Litigation")[1] and the motions to dismiss on grounds of forum non conveniens (ECF Nos. 265,

266, 269, and 273) filed by defendants Faraday Reinsurance Co. Ltd. ("Faraday"), General Star

International Indemnity International Indemnity Ltd. ("GSIIL"), HDI-Gerling, ACE European

Group Ltd. ("ACE"), Portman Insurance Ltd. ("Portman"), QBE Insurance (Europe) Ltd.

("QBE"), Swiss Re Europe S.A. ("Swiss Re"), and New Hampshire, seeking to dismiss the

claims asserted by HNA against those defendants in Civil Action Number 11-247 (the "2011

Litigation").[2]   For the reasons stated on the record, those motions were all denied.[3]   This is the

written opinion the court advised it would issue to explain in more detail those reasons.

---

[1] The original parties in the 2009 Litigation were HNA (plaintiff), Ace Property & Casualty Insurance Company (defendant), Fireman's Fund Insurance Company (defendant), HDI-Gerling (defendant), New Hampshire (defendant), and Ampco-Pittsburgh Corporation (defendant).  As a result of settlements, the remaining parties are now HNA (plaintiff), HDI-Gerling (defendant) and New Hampshire (defendant).

[2] The original complaint in the 2011 Litigation was filed by Ampco-Pittsburgh Corporation and Air Liquid Systems Corporation against HNA and eighteen other defendants.  HNA, in response, among other things, filed cross-claims against all the other original defendants and asserted additional counterclaims and cross-claims against thirteen other insurers.  Thus, the parties in the 2011 Litigation are: Air & Liquid Systems Corporation (plaintiff, counterclaim defendant), Ampco-Pittsburgh Corporation (plaintiff, counterclaim  defendant), Allianz Underwriters Insurance Company (defendant, cross-claim defendant), Allstate Insurance Company (defendant, cross-claim defendant), The American Insurance Company (defendant, cross-claim defendant), Assicurazioni Generali S.p.A. (defendant, cross-claim defendant), Associated International Insurance Company (defendant, cross-claim defendant), Columbia Casualty Company (defendant, cross-claim defendant), The Dominion Insurance Company Limited (defendant, cross-claim defendant), Executive Risk Indemnity Inc. (defendant, cross-claim defendant), Federal Insurance Company (defendant, cross-claim defendant), First State Insurance Company (defendant, cross-claim defendant), Harper Versicherung AG (defendant, cross-claim defendant),  Lexington Insurance Company (defendant, cross-claim defendant), Mt. McKinley Insurance Company (defendant, cross-claim defendant), Sompo Japan Insurance Inc. (defendant, cross-claim defendant), TIG Insurance Company (defendant, cross-claim defendant), Twin City Fire Insurance Company (defendant, cross-claim defendant), United States Fire Insurance Company (defendant, cross-claim defendant), Certain Underwriters at Lloyd's  London (cross-claim defendant, additional counterclaim/cross-claim defendant), Equitas Insurance Limited (additional counterclaim/cross-claim defendant), Munich Reinsurance America, Inc. (additional counterclaim/cross-claim defendant), Old Republic Insurance Company (additional counterclaim/cross-claim defendant), Stronghold Insurance Company (additional counterclaim/cross-claim defendant), Tenecom Limited (additional counterclaim/cross-claim defendant), ACE (additional counterclaim/cross-claim defendant), Faraday (additional counterclaim/cross-claim defendant), GSIIL (additional counterclaim/cross-claim defendant), HDI-Gerling (additional counterclaim/cross-claim defendant), New Hampshire (additional counterclaim/cross-claim defendant), Portman (additional counterclaim/cross-claim defendant), QBE (additional counterclaim/cross-claim defendant), and Swiss Re (additional counterclaim/cross-claim defendant).   No party has been dismissed.

[3] The motions filed by Faraday and GSIIL also included an additional ground for dismissal of the claims asserted by HNA against Faraday and GSIIL.  Faraday and GSIIL argued that HNA improperly joined HDI-Gerling, New

## Background[4]

In the 2009 Litigation, HDI-Gerling, on February 1, 2010, filed a motion to dismiss on grounds of forum non conveniens (the "first motion to dismiss").  ECF No. 113.  HDI-Gerling argued that there was an adequate alternative forum (England) for the adjudication of HNA's claims against it and that relevant private and public interest factors under the applicable standard of review favored dismissal of the action against it.  ECF No. 38.  The court held a hearing on that motion and denied it on May 26, 2010.  The basic arguments raised by HDI-Gerling in its first motion to dismiss were that England is an adequate alternative forum and it would be difficult for it to obtain discovery in England.  In addressing these arguments, the court noted that while England could be an adequate alternative forum as to HDI-Gerling, it would not be so for all other defendants.

In reaching its decision, the court considered private interest factors, such as the ease of access to sources of proof, availability of compulsory process for attendance of witnesses, and the cost of obtaining attendance of witnesses.  With respect to these interest factors, the court noted that evidence pertaining to the facts giving rise to the insurance coverage issues brought before this court is located within the jurisdiction of this court; the court also noted that HDI-Gerling failed to show the unavailability of compulsory process for attendance of witnesses or that costs for their attendance would be unreasonable.  To the contrary, the court found that the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention") is routinely used for purposes of obtaining the testimony of witnesses

---

Hampshire, ACE, Portman, QBE, Swiss Re, and them in the 2011 Litigation.  As stated on the record, the court denied Faraday/GSIIL's motion to dismiss based on the ground of improper joinder because the ultimate question of fact and law involved in those claims concern the underlying policy LH9813535, which is at the heart of both the 2009 and 2011 Litigations.  See ECF No. 336 at 99.

[4] Because the parties are familiar with the procedural and factual background, the court will only address the merits of the motions heard on November 16, 2011, and reference to factual and procedural matters will be made only to the extent necessary to explain the court's reasoning.

located abroad.  While HDI-Gerling would have to take some steps in England to secure an order to compel testimony for use in the United States, <u>see</u> declaration of Roger Enock, Esq., ECF No. 84-6 at 2, nothing was brought to the court's attention to conclude that it is not feasible. The court also noted that its courtroom is equipped for taking live testimony through videoconferencing, which obviously would reduce dramatically the costs otherwise associated with bringing foreign witnesses to this forum or having to introduce a deposition.

The court also considered public interest factors, such as administrative difficulties, local interest in the controversy, and judicial efficiency.  With respect to these interest factors, the court noted that it was not aware of any administrative difficulty in handling this case in this district, and there was a localized interest in the controversy given that certain evidence is located within this district.  Even if the court were to sever HDI-Gerling from the 2009 Litigation, it would not accomplish any efficiency considering that the court would still have to decide the same issues with respect to HNA's claims against other defendants, such as the determination of applicable law.  Upon consideration of all the interest factors mentioned above and in light of the defendant having the burden to show that a motion to dismiss on forum non conveniens grounds should be granted, the court denied that motion.  The court found HDI-Gerling failed to show that "the public and private interest[s] . . . weigh heavily in favor of dismissal."  ECF No. 382 at 41.

New Hampshire in the 2009 Litigation on September 21, 2011, filed a motion to dismiss on grounds of forum non conveniens (ECF No. 289), raising, in essence, the same arguments put forward by HDI-Gerling in its second motion to dismiss filed in the 2009 Litigation on that same date.  ECF No. 283.  In that second motion to dismiss, HDI-Gerling argues that a later-filed

action in the United Kingdom warrants dismissal.  The same arguments are raised in the motions to dismiss filed in the 2011 Litigation.

In the 2009 Litigation pending in this court, the underlying excess policy at issue is LH9813535, subscribed, among others, by HDI-Gerling and New Hampshire, effective from July 22, 1998 to May 31, 1999. ECF No. 105 (2009 Litigation).[5] This excess policy (the "first excess policy") has the same form which will be followed by the policies at issue in the 2011 Litigation, i.e., the second excess policy and the third excess policy, respectively LH9813364 (subscribed, among others, by GSIIL, Faraday, HDI-Gerling, and New Hampshire) and LH9813458 (subscribed by ACE, HDI-Gerling, Portman, and QBE).   ECF No. 185-1 (2011 Litigation).  The second and third excess policies have the same effective dates as the first excess policy (i.e., July 22, 1998 to May 31, 1999).  Id.  The second and third excess policies are "follow-form" policies, i.e., they each incorporate by reference the same form as the first excess policy, LH9813535.[6]  The second excess policy, LH9813364, is the subject matter, along with other policies, of another litigation brought by Faraday on or about December 6, 2010, in the High Court of Justice (the "High Court") in London, England (the "English Litigation").[7]  With respect to the second excess policy, LH9813364, the High Court, after reviewing it along with

---

[5] The policies disputed in the 2009 and 2011 Litigations are the 1998 policies only.  Counsel for HNA represented in open court that it is not HNA's intention to join in the pending litigations before this court any claim that HNA might have under the 1999 or the 2000 policies. ECF No. 336 at 36.

[6] The underlying policy, LH9813535, is the subject matter in the 2009 Litigation and likewise in the 2011 Litigation.

[7] Among other things, "[i]n the English proceedings Faraday seeks declaration that . . . the policies [LH9813364, LK9905225, and LK0005589] by which GSIIL insured [Howden North America Inc. ("HNA")] are governed by English law and subject to the jurisdiction of the English courts …." ECF No. 300-9 at 4.  The English proceedings concern the three excess policies above noted, which were written by GSIIL "in respect of 'Howden Group Ltd and/or subsidiary companies.'"  Id. at 3.  As of November 30, 2010, "all policies written by GSIIL, including these, were transferred to . . . [Faraday] pursuant to section 111(1) of the Financial Services and Market Act 2000."  Id.

the underlying excess policy,[8] concluded that the policies had an implied choice of English law and that England is the appropriate forum in which to seek relief.

During the November 16, 2011 hearing, the court first addressed HDI-Gerling's second motion to dismiss and New Hampshire's motion to dismiss filed in the 2009 Litigation. With respect to the HDI-Gerling's second motion to dismiss, noting that the court already decided a similar motion (ECF No. 113) filed by HDI-Gerling (see minute entry for May 26, 2010), the court treated the second motion as a motion for reconsideration of its prior ruling. During the hearing, HDI-Gerling, in essence, argued that the filing of the English Litigation months after the denial of its first motion to dismiss on grounds of forum non conveniens in 2010 warrants reconsideration. Specifically, counsel for HDI-Gerling argued that the form of the same policy (the first excess policy, LH9813535) is being reviewed in four separate actions (two in England and two before this court) and that it could lead to inconsistent rulings by different courts pertaining to that policy. ECF No. 336 at 39-40. HDI-Gerling argued that it would be highly unlikely this court would apply Pennsylvania law to the actions pending before this court. Id. at 48.

HNA argued that this court already decided the issue about forum non conveniens over one year ago, the discovery phase in the 2009 Litigation is substantially completed and most of the evidence gathered could not be used in the English Litigation. HNA argued that under the Restatement (Second) of Conflict of Laws § 188(2), which is followed in Pennsylvania, Pennsylvania law would apply to this matter.

---

[8] The High Court did not specifically identify the policy whose form is followed by the second excess policy, LH9813364. A review of the written opinion of the High Court, however, reveals that the form of the policy at issue before this court in the 2009 Litigation (the first excess policy) is the form of the underlying policy reviewed by the English court. ECF No. 300-9; see ECF No. 336 at 30.

With respect to New Hampshire's motion in the 2009 Litigation, the court questioned the timeliness of the motion. Counsel for New Hampshire argued that filing of the motion became apparent only after HNA filed its counterclaims and cross-claims in the 2011 Litigation. After HNA filed those claims, New Hampshire argued it became clear that England would be more convenient.

The court, as explained below and during the hearing held on November 16, 2011, considered and weighed all the relevant factors in denying the motions to dismiss on grounds of forum non conveniens filed in the 2009 Litigation and the 2011 Litigation.

### Legal Standard

In Windt v. Qwest Communications International, Inc., 529 F.3d 183 (3d Cir. 2008), the Court of Appeals for the Third Circuit held:

> "[T]he district court is accorded substantial flexibility in evaluating a forum non conveniens motion, and '[e]ach case turns on its facts.'" *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (citations omitted). Furthermore, "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). . . .
>
> . . .
>
> [W]hen considering a motion to dismiss on *forum non conveniens* grounds, a district court must first determine whether an adequate alternative forum can entertain the case. If such a forum exists, the district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum. Once the district court has determined the amount of deference due the plaintiff's choice of forum, the district court must balance the relevant public and private interest factors. If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds.

Id. at 188-90 (footnote omitted).

The private and public interest factors to be weighed by the district court are:

Factors pertaining to the private interests of the litigants include:

> the relative ease of access to sources of proof; availability of
> compulsory process for attendance of unwilling, and the cost of
> obtaining attendance of willing, witnesses; possibility of view of
> premises, if view would be appropriate to the action; and all other
> practical problems that make trial of a case easy, expeditious and
> inexpensive.

[*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)]. Public interest factors
bearing on the inquiry include administrative difficulties flowing from court
congestion; the "local interest in having localized controversies decided at home";
the interest in "having the trial of a diversity case in a forum that is at home with
the state law that must govern the case"; the avoidance of unnecessary problems
in conflict of laws, or in the application of foreign law; and the unfairness of
burdening citizens in an unrelated forum with jury duty.  [*Id.* at 508-509].

Windt, 529 F.3d at 189.

With respect to which party bears the burden of proof in motions to dismiss on grounds

of forum non conveniens, the court of appeals in Lacey v. Cessna Aircraft Co., 932 F.2d 170 (3d

Cir. 1991), recognized:

> "It is settled that the defendant bears the burden of persuasion as to all elements of
> the forum non conveniens analysis." *Lacey* [*v. Cessna Aircraft Co.,* 862 F.2d 38,
> 43-44 (3d. Cir. 1988)]. This burden comprises two basic elements. The defendant
> must establish, initially, that an adequate alternative forum exists as to all
> defendants. *Id.* at 44. If the defendant satisfies this burden, it must then show that
> the private and public interest factors weigh heavily in favor of dismissal. *Id.*
>
> . . .
>
> Once a defendant establishes that another forum is adequate (and available) to
> hear the case, the focus then shifts to the private and public interest factors
> catalogued in *Gulf Oil* and *Piper*. . . .
>
> To prevail on a *forum non conveniens* motion, the movant must show that the
> balance of these factors tips decidedly in favor of trial in the foreign forum. *See In
> re Air Crash* [*Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1164 (5th
> Cir. 1987)] ("[T]he moving defendant must ... establish that the private and public
> interests weigh heavily on the side of trial in the foreign forum."). If, when added
> together, the relevant private and public interest factors are in equipoise, or even
> if they lean only slightly toward dismissal, the motion to dismiss must be denied.

Lacey, 932 F.2d at 180.

## Discussion

The court will first address HDI-Gerling's second motion to dismiss filed in the 2009 Litigation and next will consider New Hampshire's motion to dismiss filed in the 2009 Litigation.  Finally, the court will address all the relevant factors in connection with the motions to dismiss filed in the 2009 and 2011 Litigations.

### A.  HDI-Gerling's Second Motion to Dismiss filed in the 2009 Litigation

The court treated the second motion to dismiss on grounds of forum non conveniens filed by HDI-Gerling in the 2009 Litigation (ECF No. 283) as a motion for reconsideration.  A motion for reconsideration is ordinarily granted only if: (1) there is "an intervening change in the controlling law," (2) it involves the presentation of "new evidence" that was not available at the time of the ruling in question, or (3) to address a "need to correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Other than arguing that the later filing of two actions in England, involving similar issues to those raised in the 2009 Litigation, warrants granting the motion, HDI-Gerling did not adduce any new evidence.  Subsequent litigation in England – commenced more than six months after this court held the claims against HDI-Gerling asserted in the 2009 Litigation would not be dismissed on grounds of forum non conveniens – cannot be classified as an intervening change in law and does not show a clear error of law or fact or manifest injustice.  The English Litigation is not new evidence warranting dismissal.  It simply shows the English forum is an adequate alternative forum which the court previously determined was not in and of itself sufficient to warrant dismissal after balancing the private and public interest factors.  Particularly significant is that fact discovery is substantially completed in the 2009 Litigation and the case will soon be ripe for dispositive motions or a trial.

9

After careful consideration, the court concluded that it already ruled upon the issues raised in the instant motion at the hearing held on May 26, 2010, and that HDI-Gerling failed to raise any new argument warranting this court's reconsideration of its decision not to dismiss the claims asserted against HDI-Gerling in the 2009 Litigation.

### B.  Timeliness of New Hampshire's Motion to Dismiss filed in the 2009 Litigation

With respect to the motion to dismiss filed by New Hampshire in the 2009 Litigation (ECF No. 289), the court's initial concern was the timeliness of the motion.  Upon review, the court concludes that the motion was timely filed.  See Marnavi Splendor GMBH & Co. KG v. Alstom Power Conversion, Inc., 706 F. Supp. 2d 749, 754 (S.D. Tex. 2010) ("This analysis must be carried out in light of the circumstances at the time of the motion's filing-not the time at which the action commenced." (citing In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1166 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom.* Pan Am. World Airways, Inc. v. Lopez, 490 U.S. 1032 (1989), *reinstated except as to damages by* In re Air Crash Disaster Near New Orleans, La., 883 F.2d 17 (5th Cir. 1989) (en banc)); Bank of Crete, S.A. v. Koskotas, No. 88-cv-8412, 1991 WL 280714, at *1 (S.D. N.Y. Dec. 20, 1991) ("The motion should be reviewed 'in light of the status of the case at the time the motion was filed.' [Air Crash, 821 F.2d at 1166 & n.31]).")  In light of the filing of the English Litigation more than two years after the 2009 Litigation   was commenced, the court will entertain New Hampshire's motion. Notwithstanding its timeliness, the motion must be denied for the reasons explained below.

**C. Application of the <u>Windt</u> factors to the Motions to Dismiss filed in the 2009 and 2011 Litigations**

The court considered each factor identified in <u>Windt</u> in determining that England is not a more convenient forum to litigate coverage issues arising under the underlying excess policy at issue in the 2009 Litigation and the second and third excess policies at issue in the 2011 Litigation pending before this court.  The court will separately address the factors described in <u>Windt</u>.

1) <u>Existence of an adequate alternative forum</u>

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 (1981).  The movants argued that they are already subject to jurisdiction in the United Kingdom in connection with the cases pending in England and that England is an adequate forum with respect to the subject matter of the cases pending here – declaratory judgment relating to insurance policies that were allegedly underwritten, negotiated and issued in England.

HNA argues that England is not an adequate alternative forum for three main reasons: (i) HNA could not have filed all its claims relating to the policies in England because neither Ampco-Pittsburgh Corporation ("Ampco") nor many of HNA's domestic insurers could have been sued in England,[9] and (ii) HNA's ability to prosecute its claims against the movants could

---

[9] In <u>Rolls-Royce Commercial Marine, Inc. v. New Hampshire Ins. Co</u>., No. 09-cv-61329, 2010 WL 5067608 (S.D. Fla. Dec. 7, 2010), the district court noted:

> While it is true a forum is only available if the defendants are subject to process in the alternative forum, the forum non conveniens test generally assumes the plaintiff who brought suit in the challenged venue will be the plaintiff in the proposed alternative forum. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.").

be "emasculated" as a result of English procedural rules.   Under English law, an English court might require HNA to prove the precise timing of the underlying asbestos injuries and this could potentially require HNA to obtain documentary or testimonial evidence from hundreds or thousands of underlying claimants, counsel, doctors, experts, etc.; and (iii) English courts do not have a procedure for HNA to obtain this nonparty evidence through discovery.

The subject matter of the 2009 Litigation and the 2011 Litigation will require this court to determine whether English law or the law of a jurisdiction within the United States is applicable.   Pennsylvania law and English law differ with respect to the resolution of asbestos claims.   Under English law, exposure to a hazardous condition is not itself an injury, but under Pennsylvania law "a theory of multiple triggers of periods of insurance from exposure to manifestation has been followed." ECF No. 300-9 at 3 (Approved Judgment of the High Court). "The second difference is that, in English law, but not in the relevant United States jurisdictions, the period clause is a fundamental provision of an insurance policy." Id.   It should be noted, to this end, that

> while the foreign forums completely prohibiting any meaningful "litigation of the subject matter" disputed cannot qualify as adequate alternatives, *Piper,* 454 U.S. at 254 n.22, 102 S.Ct. 252, the unavailability of a certain theory for recovery or the possibility of lesser damages cannot render the alternate forum inadequate. *See id.* at 255, 102 S.Ct. 252. For example, the Court in *Piper* held that the alternate forum was not inadequate where there was "no danger that [plaintiffs would] be deprived of any remedy or treated unfairly." *Id.* In sum, the first prong of the forum non conveniens doctrine does not obligate the courts to "conduct[ ] complex exercises in comparative law." *Id.* at 251, 102 S.Ct. 252. In fact, the *Piper* Court favored dismissal where the court would have to engage in "untangling problems in conflict of laws, and in law foreign to itself." *See id.*

Windt, 544 F. Supp. 2d at 418 (footnotes omitted) (alteration in original).

---

Id. at *3. Here, HNA argues that it could not have filed "this action" against Ampco and the other domestic insurers in England.  The "action" relevant for purposes of this dispute, however, is not the claims against Ampco, but the cross-claims against the movants. Given that all relevant parties for purposes of "this action", i.e., HNA's cross-claims in the 2009 and 2011 Litigations, are amenable to service in England, that argument is not persuasive.

Similarly, differences in rules of procedure are not dispositive of the issue.  For example, in Deiermenjian v. Deutsche Bank, A.G., 06-cv-774, 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006), the district court noted:

> As many courts have held, however, differences in the scope and mode of discovery-indeed, even the complete absence of pretrial discovery-do not render a forum inadequate. See *Satz* [*v. McDonnell Douglas*, 244 F.3d 1279, 1283 (11th Cir. 2001)] (lack of discovery in the Argentine courts did not render Argentina an inadequate forum); *Mercier* [*v. Sheraton Intern., Inc.*, 981 F.2d 1345, 1352-53 (1st Cir. 1992)] (an alternative forum is not ordinarily considered inadequate merely because its courts afford different or less generous discovery procedures than those available under American rules); *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1484 (9th Cir. 1987) (holding that Singapore was an adequate forum although depositions were allowed only in certain circumstances), amended on other grounds, 861 F.2d 565 (9th Cir. 1988). Therefore, the asserted deficiencies in discovery procedures do not warrant a finding that Germany offers inadequate procedural safeguards for forum non conveniens purposes.

Id. at *10 (footnote omitted).

In Parex Bank v. Russian Savings Bank, 116 F.Supp.2d 415 (S.D. N.Y. 2000), the district court noted:

> A foreign forum is not inadequate despite employing different procedures, *see, e. g., Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 768 (9th Cir. 1991), or due to general allegations of judicial corruption, *see, e.g., Blanco* [*v. Banco Indus. de Venezuela,* 997 F.2d 974, 981–82 (2d Cir. 1993)]. And, while an alternate forum's less favorable substantive law should ordinarily not weigh heavily against dismissal, this factor increases in significance when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper,* 454 U.S. at 254. This high standard is met in cases where, for example, the foreign forum "does not permit litigation of the subject matter of the dispute," *id.,* 454 U.S. at 254 n.22 . . ., or "would deny [the plaintiff] access to its judicial system on the claims in his complaint," *El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 678 (D.C. Cir. 1996), or if the decision to dismiss "would render a plaintiff unable to pursue his or her action elsewhere," *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1225 (3d Cir. 1995).

Id. at 423.

Despite the differences in the fora, a forum in the United Kingdom qualifies as an adequate alternative forum. Other federal courts have found the United Kingdom to be an adequate alternative forum. <u>See, e.g., Pik v. Chan</u>, No. 08-cv-10659, 2010 WL 2653657, at *3 (S.D. N.Y. July 2, 2010) (citing <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 75 (2d Cir. 2003), for the following proposition: "Since . . . we have expressed high regard for those courts' fairness and commitment to the rule of law . . . it certainly cannot be said that it was an abuse of discretion to hold that England was an adequate alternative forum" (citation omitted)); <u>Ridley Bagel, Ltd. v. Kellogg Co.</u>, 233 F. Supp. 2d 853 (E.D. Mich. 2002);[10] <u>Fesa UK Ltd. v. M/V Arktis Sun</u>, No. 01-cv-2940, 2002 WL 31413894, at *2 (Mar. 26, 2002). The court concludes that, for purposes of these motions to dismiss on grounds of forum non conveniens, England is an adequate alternative forum.

2)  <u>Deference to HNA's choice of forum</u>

The next matter the court must consider is the degree of deference to HNA's choice of forum.

> The Supreme Court has held that "although 'there is ordinarily a strong presumption in favor of plaintiff's choice of forum, . . . that . . . presumption applies with less force when the plaintiff or real parties in interest are foreign.'" [*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 178 (3d Cir. 1991) ("Lacey II")]

---

[10] In <u>Ridley Bagel</u>, the court noted:

> Plaintiff does contend, however, that England provides an inadequate forum because it would be unable to pursue this particular action in the English courts. The only support for Plaintiff's position in its solicitor's affidavit are [the] differences between the U.S. and U.K. procedures on discovery ("disclosure" in the U.K.), witness depositions, the availability of a jury trial, litigation costs, and availability of certain damages.

<u>Ridley Bagel</u>, 233 F.Supp.2d at 857.  The court held that

> while the discovery procedures (including witness depositions) vary between the two fora, the differences would not bar this action (or even necessarily hinder it) from proceeding through the English courts.  Second, the fact that litigation costs in England would be somewhat higher for Plaintiff does not mean that the English courts fail to provide an inadequate alternative forum. See *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608, 615 (6th Cir. 1984).

<u>Id.</u> at 857-58.

(citing *Piper*, 454 U.S. at 255). When reviewing a motion to dismiss on *forum non conveniens* grounds

> the district court must indicate the amount of deference it is giving to plaintiff's choice. Where a foreign plaintiff has made a strong showing of convenience, we hold that the district court must indicate how far that showing goes toward putting the foreign plaintiff on the same footing as a domestic plaintiff.

> *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989). However, the Third Circuit does not require the district court to identify with exact precision the amount of deference given to plaintiff's choice of forum. *Lacey II*, 932 F.2d at 179. In *Lacey II*, the Third Circuit held that the district court accorded proper weight to plaintiff's choice of forum by stating that "because plaintiff is forced to choose between two inconvenient fora, his choice is due 'at least some weight . . . and we will . . . hold defendants to establishing a strong preponderance in favor of dismissal.'" *Id.*

Faat v. Honeywell Intern., Inc., 04-cv-4333, 2005 WL 2475701, at *2 (D. N.J. Oct. 5, 2005).

The movants argue that the HNA's forum choice should not be given deference because: (i) HNA is incorporated in Delaware and has its principal place of business in South Carolina, (ii) at the time the policies were issued, HNA was a subsidiary of a Scottish company and its place of business was Buffalo, N.Y., (iii) of all the movants, only one – New Hampshire, is located in the United States of America; (iv) the policies at issue were allegedly negotiated in the United Kingdom, (v) the handling decisions for the claims were allegedly made in London or Germany; (vi) the disputes between HNA and the movants  involve claims for coverage under policies purchased and issued to HNA between 1994 and 2002 and are allegedly unrelated to the original suit commenced by Ampco against HNA under policies covered in the 1993 stock purchase agreement entered into by (now) HNA and Ampco, (vii) HNA's conduct has created piecemeal litigation and real risk of multiple and inconsistent legal rulings, and (viii) HNA is forum shopping because it can no longer amend its claims in the 2009 Litigation and wants to avoid the litigation filed by Faraday in England.

HNA argues that the Pennsylvania forum should be given great deference because: (i) Pennsylvania is a "home forum" for a U.S. company and the selection of this forum was motivated by convenience, and (ii) HNA did not create litigation in multiple jurisdictions or a risk of inconsistent rulings and was not forum shopping.

The resolution of the 2011 Litigation is intertwined with the resolution of the 2009 Litigation because the policies involved in 2011 Litigation "follow form" to the excess underlying policy involved in the 2009 Litigation. "[A] following form excess policy often incorporates by reference the terms and conditions of the underlying policy.  It is well settled that the obligations of following form excess insurers are defined by the language of the underlying policies, except to the extent that there is a conflict between the two policies, in which case the wording of the excess policy will control." Lexington Ins. Co. v. W. Pa. Hosp., 318 F.Supp.2d 270, 274 n.3 (W.D. Pa. 2004) (quoting BARRY R. OSTRAGER, ET AL., HANDBOOK ON INSURANCE COVERAGE DISPUTES, 817–18 (11th ed. 2002)). "Moreover, under a "follow form" policy provision, 'the parties agree that the coverage issues presented turn solely on the interpretation of the underlying polic[y].'" Fireman's Fund Ins. Co. v. Kettleman, 248 F. App'x 126, 127 (11th Cir. 2007) (quoting Houbigant, Inc. v. Fed. Ins. Co., 374 F.3d 192, 203 (3d Cir. 2003)).[11]

---

[11] See Rockwell Automation, Inc. v. National Union Fire Ins.. Co. of Pittsburgh, PA, 544 F.3d 752, 755 (7th Cir. 2008) (quoting Houbigant for the same proposition).  In Travelers Casualty and Surety Co. v. Insurance Co. of North America, 609 F.3d 143 (3d Cir. 2010), the court of appeals noted:

> The general rule is that
>
>> [w]here a following form clause is found in the reinsurance contract, concurrency between the policy of reinsurance and the reinsured policy is presumed, such that a policy of reinsurance will be construed as offering the same terms, conditions and scope of coverage as exist in the reinsured policy, i.e., in the absence of explicit language in the policy of reinsurance to the contrary.
>
> Aetna Cas. & Sur. Co. v. Home Ins. Co., 882 F. Supp. 1328, 1337 (S.D. N.Y. 1995). As the District Court observed, there is nothing in the certificates issued by INA that clearly restricts INA's reinsurance coverage beyond the limits stated in the underlying policies. Thus, the question of whether INA is bound by Travelers' decision to annualize the per-occurrence limits of three-

In the 2009 Litigation, this court already found in May 2010 that deference should be given to HNA's choice of forum.   In light of the extensive discovery that has occurred since that ruling and the expectation that dispositive motions may be filed or a trial held in the near future in the 2009 Litigation and with the understanding that the analysis of the underlying excess policy in that case will impact the 2011 Litigation, this court sees no reason not to give great deference to HNA's choice of forum in both cases.  This forum is a convenient forum for HNA and HNA did not cause the other litigations to be filed in England.  To the contrary, the actions of Faraday and the other movants in seeking an English forum, after knowing about HNA's 2009 Litigation and the likelihood that HNA would sue them,[12] demonstrate that it is the movants who are shopping for a forum and not HNA.   Having determined that England is an adequate alternative forum and that great deference should be given to HNA's choice of forum the court must now balance the private and public interests implicated in these cases.

3)  Private Interest Factors

The Supreme Court has enumerated a list of private and public interest factors to guide the district court in its forum non conveniens analysis.   The private interest factors include, but are not limited to, "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

---

year policies hinges entirely on whether that decision was a reasonable interpretation of how the underlying policies' per-occurrence limits operated.

Id. at 166 n.31; see Associated Indem. Corp. v. Dow Chemical Co., 814 F. Supp. 613, 618 (E.D. Mich. 1993) (noting that primary and following form policies should be construed consistent with each other, otherwise the insured's "reasonable expectations of having a meaningful and coordinated insurance program in place might be frustrated"); Kropa v. Gateway Ford, 974 A.2d 502, 506 (Pa. Super. Ct. 2009) ("Therefore, we may not treat these policies in isolation, because to the extent the Excess Policy incorporates terms identified or defined in the Primary Policy, those terms must be afforded the same meaning.").

[12] Faraday commenced the English Litigation on December 6, 2010, after it received a letter from HNA dated August 23, 2010 "giving notice of occurrences which it was said may entitle [HNA] to claim under the second and third policies." ECF No. 300-9 at 3.

possibility of view of premises . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

HNA argues that (i) all potentially relevant evidence is located or available in Pennsylvania -- not in England -- and any evidence located outside Pennsylvania can be obtained through the Hague Convention; (ii) much of the evidence required in the 2009 and 2011 Litigations was already produced in the 2009 Litigation; (iii) the movants ignore the immense burden on HNA, a small U.S. company with no operations or employees in England, of litigating "the same coverage issue" on both sides of the Atlantic when the entire dispute is already before this court.

Faraday argues that (i) Faraday is based in England, and, like the other movants, issued its policy in London by "scratching the placement slip"; (ii) HNA's parent company purchased the policies from its corporate headquarters in Scotland and movants were solicited to participate as insurers of HNA's parent company in London by a London-based broker; (iii) the witnesses who placed the insurance and scratched the slips are located in the United Kingdom; (iv) while HNA may argue that evidence relating to the underlying asbestos claims is located in the chosen forum, such evidence is irrelevant to this analysis.   Specifically with respect to that last argument, Faraday points out that the issues between HNA and the movants implicate the interpretation of the insurance policies and, to the extent coverage exists, whether the underlying policies have been properly exhausted. The information concerning the underlying asbestos claims can be exchanged electronically without the need to be physically in the location where these claims arise and it does not matter that Ampco, a plaintiff in the 2011 Litigation, has its principal place of business in Pennsylvania.  The movants did not insure Ampco and Ampco did not assert any claims against the movants.  Faraday points to a parallel proceeding taking place

between Faraday and HNA in an English court and argues that allowing both actions to proceed will cause practical problems.

New Hampshire argues that the relevant witnesses and proof concerning the interpretation and application of the New Hampshire policy are located in the United Kingdom. HDI-Gerling, Portman, QBE, and Swiss Re argue that key witnesses are located in the United Kingdom and are outside this court's subpoena power.

The court agrees with HNA that consideration of the private interest factors leads this court to conclude that they weigh in favor of HNA's chosen forum.  In particular, the court notes: 1) the resolution of any coverage issue to be resolved in the 2009 Litigation and the 2011 Litigation must be determined by the form of the underlying excess policy, LH9813535 (as noted, the excess policies at issue in the 2011 Litigation follow the form of the underlying excess policy at issue in the 2009 Litigation); 2) the underlying excess policy has been litigated for years in the 2009 Litigation before this court, where extensive discovery has been conducted, and 3) this court acquired familiarity with the issues and the factual background.  The relative access to proof within this forum already exists because of the extensive discovery that has been conducted in the 2009 Litigation and the relevancy of that discovery to the 2011 Litigation. Any difficulties with discovery in the United Kingdom will be resolved under the Hague Convention. Each party has experienced counsel who are familiar with litigation that occurs in the United States and England.  Compelling process in the United Kingdom has already been utilized in the 2009 Litigation without apparent difficulty.  The costs relative to the action in England and in this forum have not been shown to be disproportionate in either forum and this court was not advised of -- and cannot envision -- any practical problem that would at this stage of the proceedings (where extensive discovery has occurred and the 2009 Litigation will be ripe for

dispositive motions or trial in the near future) make the United States forum more difficult, less expensive or more expensive than the English forum.   Finally, it should be noted that while it might be convenient for the movants to move the litigation (or at least part of it) to the United Kingdom, the bulk of the defendants (23) and the original plaintiffs in the 2011 Litigation are before this court, and will be before this court for the resolution of the disputes.   As such, it is certainly not efficient to dismiss parties when similar claims must be addressed by this court anyway.   It also creates risks of inconsistent decisions by the courts.   Under these circumstances, the private interest factors weigh heavily in favor of maintaining the 2009 Litigation and the 2011 Litigation in this forum.

4)   <u>Public Interest Factors</u>

The public interest factors include, but are not limited to, administrative difficulties (congestion of the court); jury burdens; local interest in the controversy; and familiarity with the governing law.   <u>Gulf Oil</u>, 330 U.S. at 508-09; <u>Windt</u>, 529 F.3d at 189.

Most of the public interest factors mitigate in favor of keeping these movants before this court.   The disputes pertaining to the underlying excess policy have been litigated before this court since 2009. This court did not face any administrative difficulties and does not foresee any administrative difficulty or burden in selecting a jury.   There is local interest in the disputes as they involve coverage issues for asbestos claims arising exclusively in the United States.   The only issue left unresolved is the determination of the governing law.   Because the underlying excess policy does not have a choice of law clause, the court must determine which law applies to that policy.   The parties disagree about which law will be applicable to this controversy.   The movants argue that the law of England applies to the policies in issue.   HNA, on the other hand, argues that Pennsylvania law will be applicable.

"Because this is a diversity case, we apply the choice-of law-rules of the forum state, Pennsylvania. [*Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941)]. . . . [I]t is now clear that Pennsylvania applies the more flexible, "interest/contacts" methodology to contract choice-of-law questions." Hammersmith v. TIG Ins. Co., 480 F.3d, 220, 226-27 (3d Cir. 2007). Applying the Pennsylvania choice of law analysis, this court must first determine whether there is an "actual" conflict between the English and Pennsylvania laws with respect to insurance coverage involving asbestos claims. Id. at 231. As noted by the High Court, there are substantive differences with regard to how these matters are resolved under English and Pennsylvania law. Therefore, there is an actual conflict.  Because there is an actual conflict, this court must determine whether the conflict is "true," "false" or "unprovided-for". Id. at 232.[13]  A "true" conflict arises when both jurisdictions' interests would be impaired by the application of the other's laws. Id. at 230.  If there is a "true" conflict, then the court must determine the jurisdiction that has the most significant relationship to the dispute. Id. at 231.

The Restatement (Second) of Conflict of Laws informs the analysis of which law should be applied.  As explained in the Restatement (Second) of Conflict of Laws,

> the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

In Hammersmith, the court of appeals, in applying relevant provisions of the Restatement (Second) of Conflict of Laws, noted:

---

[13] If it is a "false" conflict, the court must apply the law of the state whose interests would be harmed if its laws were not applied.  Hammersmith. 480 F.3d at 229-30.  If it is an "unprovided-for" case, courts should apply the traditional lex loci contractus rule, which, in an insurance contract is the place where the contract was delivered. Id.  at 233.

The insurance contract between TIG and DKM provided coverage for DKM's subsidiaries in more than twenty states and throughout the world. App. 1252a-1256a. In this case, then, there is no "principal location of the insured risk," and the significance of this factor is "greatly diminish[ed]." *Compagnie* [*des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*] 880 F.2d [685,] 690 [(3d Cir. 1989)] (noting the "difficulty in defining, or even locating, the insured risk" because the equipment manufactured by the insured is "distributed throughout the world"); *see also Gould Inc. v. Cont'l Cas. Co.,* 822 F. Supp. 1172, 1175-76 (E.D. Pa. 1993) (finding § 193 [of the Restatement (Second) of Conflict of Laws] inapplicable because the "comprehensive general liability policy ... was intended to insure the risks of business operations scattered throughout a number of states"); *Manor Care v. Cont'l Ins. Co.,* No.Civ.A. 01-CV-2524, 2003 WL 22436225, at *6 (E.D.Pa. Oct.27, 2003) (holding that § 193 did not apply where the insured facilities were located in thirty states).

Because § 193 is largely inapplicable, we turn to § 188(2) [of the Restatement (Second) of Conflict of Law] (the general provision governing contracts), which directs us to take the following contacts into account: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. In *Compagnie,* we observed that when notice is at issue, the "location of the insured risk is further diminished in importance while factors like the location of the injury, the domicile of the parties, and the location of contracting and negotiation become relatively more important."

Id. at 233.   Section 188 of the Restatement (Second) of Conflict of Law provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract, and
    (e) the domicil[e], residence, nationality, place of incorporation and
        place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

With this background, the court must apply section 188 and needs to identify the contacts and their relationship to the policies and interests underlying the relevant issue.    The  affidavits filed by the parties in support of their arguments are deeply inconsistent.  With respect to the first and second factors identified in section 188(2)(a), (b), HDI-Gerling, for example, argues that the policies were negotiated and contracted in England.   HNA, on the other hand, argues that policies were negotiated and contracted in multiple locations, including New York, Germany and England. Additionally, HNA argues that the insurance contracts were made in the United States as they were delivered to HNA and Ampco respectively in New York and Pennsylvania.  ECF No. 300 at 51.   "An insurance contract is made in the state where it was delivered." Hammersmith, 480 F.3d at 233.  The movants do not quarrel with HNA's allegation that the contracts were delivered in the United States. Thus, this court may conclude that the policies were made in the United States (i.e., New York and Pennsylvania).

With respect to the third factor (section 188(2)(c)), the place of performance seems to favor the movants. HNA argues that the place of performance is the place where the indemnity obligation must be performed, which is South Carolina, where HNA's headquarters are currently located.  HNA is incorrect.  "Generally, an insurance contract is performed where the premiums are received." Id. at 234 n.13.  HNA did not respond to HDI-Gerling's allegation that the premiums are paid to the placing broker, who is located in London.  Additionally, HNA did not respond to HDI-Gerling's allegation that the notice of claims must be provided to the placing broker, who is located in London.  ECF No. 272 at 20.  Accordingly, the court concludes that the third factor favors the movants.  In Hammersmith, the court relied on the place where notice

must be given when there is no evidence of where the premium had to be paid.  <u>Hammersmith</u>, 480 F.3d at 234.

The fourth factor (section 188(2)(d)), "location of the subject matter of the contract," does not favor the application of either law because the policy provided worldwide/nationwide coverage and thus there is no identifiable location for the risk insured by the contract.

Regarding the fifth factor (section 188(2)(e)), while HDI-Gerling emphasizes that the majority of the parties' domiciles, place of incorporation or places of business were in England, ECF No. 272 at 22, HNA emphasizes that HNA itself is incorporated in Delaware, New Hampshire is a Pennsylvania corporation based in New York, HDI-Gerling is a German corporation based in Germany "that had done substantial business in Pennsylvania," (ECF n. 300 at 42), and that all movants, directly or indirectly, do business in the United States.  Although it is not as simple as the parties argued, the fifth factor favors HNA, especially in light of the policies being made in the United States.

Finally, the court must balance these "contacts on a qualitative scale according to their relation to the policies and interests underlying" the coverage issue.  <u>Shields v. Consol. Rail Corp.</u>, 810 F.2d 397, 400 (3d Cir. 1987).  The movants provided no analysis regarding this issue. HNA, on the other hand, focused on the underlying claims, which all originated or will originate in the United States, to conclude that Pennsylvania has a stronger interest in the dispute.  HNA's analysis, however, is inadequate. First, "we are concerned with the contract of insurance and not the underlying tort."  <u>Hammersmith</u>, 480 F3d. at 232-33.  In <u>Specialty Surfaces International, Inc. v. Continental Casualty Co.</u>, 609 F.3d 223 (3d Cir. 2010), the Court of Appeals for the Third Circuit, in examining the more recent decisions of the Superior Court of Pennsylvania which applied Pennsylvania choice of law rules to determine which state's law governed interpretation

of a contract of insurance, noted: "In each of these cases, the Superior Court consistently emphasized that Pennsylvania's choice of law rules were concerned with examining the states' contacts with the contract of insurance, not the tort involved in the underlying suit." Id. at 237. Second, as noted above, the location of the subject matter of the contract does not favor either side as the policy coverage is worldwide/nationwide, and thus there is no identifiable location for the risk insured by the contract. Accordingly, both sides failed to identify the governmental interests behind the positions of the jurisdictions and this court will not embark on such an analysis on behalf of the parties.

In Specialty, the Court of Appeals for the Third Circuit in determining the applicable law in an insurance coverage case brought before a Pennsylvania district court exercising diversity jurisdiction, after noting that that the states involved in the matter (California and Pennsylvania) reached different conclusions with respect to the issue of coverage and that there were no conflicting interests behind the positions of the two jurisdictions, stated:

> Where, as here, the sole interest of both jurisdictions is in enforcing the intent of the parties, we believe Pennsylvania's choice of law rules would favor giving primary weight to the jurisdiction providing the context in which the decision making parties negotiated their agreement. Accordingly, in this case, we believe that the place of contracting, the place of negotiation, and the parties' principal places of business are the most important contacts when determining which state's law should be applied.

Specialty, 609 F.3d at 235.

Applying the same rationale here, there is some indication that the contracts were negotiated, at least in part, in the United States, the contracts were "made" in the United States and the majority, if not all, the movants, were doing business in the United States and intended to cover risks in the United States.  While the place of negotiation and making of the contract and the places of business of the parties involved here point to the United States, it is not entirely

25

clear whether Pennsylvania or some other state's law should be the governing law.  It does not appear, however, that English law would apply.  It should be noted that the court's analysis pertaining to the applicable law is at this stage a preliminary assessment because the parties did not fully brief this matter.  A supplemental briefing schedule will be set by the court before a final decision will be made with respect to which jurisdiction's law will be applied.  It is sufficient for purposes of these motions to conclude that it is unlikely English law will apply and this court must respectfully disagree with the High Court's determination that English law would apply.   In any event it appears that, as between Pennsylvania and England, Pennsylvania has a more significant relationship to the disputes than England and a greater governmental interest in seeing its laws enforced.

Even if the court were to agree with movants that English law applies to this matter, movants failed to prove that their counsel are unable to inform the court about the applicable foreign law under Rule 44.1 of the Federal Rules of Civil Procedure or that a federal district court would not be able to determine that law.   See, e.g., Harris v. Kellogg, Brown & Root Services, Inc., 796 F. Supp. 2d 642 (W.D. Pa. 2011);[14]   HFGL Ltd. v. Alex Lyon & Son Sales Managers and Auctioneers, Inc., 264 F.R.D. 146 (D. N.J. 2009).[15]  Indeed, in connection with the

---

[14] In Harris, the district court noted:

> "The parties . . . generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440 (3d Cir. 1999). "Where parties fail to satisfy either burden the court will ordinarily apply the forum's law." Id. at 441. Thus, Rule 44.1 imposes no obligation on this Court to determine foreign law on its own accord, but this Court also possesses "broad authority to conduct [its] own independent  research to determine foreign law." Id. at 440.

Harris, 796 F. Supp. 2d at 651-52.

[15] In HFGL, the district court noted:

> Under [Fed. R. Civ. P. 44.1], the Court "may rely on its own research and any submissions from the parties when considering foreign law." Nat'l Group for Commc'ns and Computers. Ltd., v. Lucent Techs. Int'l., Inc., 331 F. Supp. 2d 290, 294 (D. N.J. 2004). The Court may seek the aid of expert witnesses and consider material that would be inadmissible at trial. Id; see also, Sidali v. I.N.S., 107 F.3d 191, 198 n. 10 (3d Cir. 1997). Pursuant to Fed.R.Civ.P. 44.1, the Court may use an expert report to determine substantive foreign law, but not to assist the Court in determining

2009 Litigation, HDI-Gerling's English solicitor prepared a report on English law.   ECF No. 372-5 (2009 Litigation).   In light of these considerations, the public interest factors – like the private interest factors – weigh heavily in favor of maintaining the 2009 Litigation and the 2011 Litigation in this forum.

<u>Conclusion</u>

Even though the United Kingdom is an adequate forum, this court found that HNA's choice of forum should be given great deference and the private and public interest factors do not "weigh heavily" in favor of dismissal[16] – to the contrary they weigh heavily in favor of this forum.   Importantly, movants failed to overcome the strong presumption[17] of convenience in favor of a domestic plaintiff's chosen forum.[18]

After thorough consideration of all relevant factors and for the reasons set forth on the record and in this opinion, the motions to dismiss on ground of forum non conveniens must be denied.

---

facts. *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 198 F. Supp. 2d 598, 623 (E.D. Pa. 2002); *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery,* 177 F.R.D. 245, 264 (D. N.J. 1997), *rev'd on other grounds,* 179 F.R.D. 450 (D. N.J. 1998). However, it is within the Court's discretion to "reject even the uncontradicted conclusions of an expert witness and reach [its] own decisions on the basis of independent examination of foreign legal authorities." *Nat'l Group,* 331 F. Supp. 2d at 294.

<u>HFGL</u>, 264 F.R.D. at 148.

[16] In <u>Lacey</u>, the court of appeals held:

> To prevail on a *forum non conveniens* motion, the movant must show that the balance of these factors tips decidedly in favor of trial in the foreign forum. *See* <u>In re Air Crash [Near New Orleans, La. on July 9, 1982</u>, 821 F.2d 1147, 1164 (5th Cir. 1987)] ("[T]he moving defendant must ... establish that the private and public interests weigh heavily on the side of trial in the foreign forum."). If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied.

<u>Lacey</u>, 932 F.2d at 180.

[17] <u>Delta Air Lines, Inc. v. Chimet, S.p.A.</u>, 619 F.3d 288, 295 (3d Cir. 2010) ("Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private factors clearly favors an alternate forum.") (quoting <u>Windt v. Quest Communications Intern., Inc.</u>, 529 F.3d 183, 190 (3d Cir. 2008)).

[18] While the court denied the motions to dismiss on grounds of forum non conveniens, the court decided to sever the additional counterclaims and cross-claims filed by HNA in the 2011 Litigation against the movants, pursuant to Federal Rule of Civil Procedure 21. The court reserved any decision with respect to the management of the severed parties or claims. ECF No. 336 at 101-05.

An appropriate order follows.

**ORDER**

    **AND NOW**, upon consideration of the motions to dismiss on grounds of forum non conveniens filed by defendants HDI-Gerling Industrie Versicherung AG and New Hampshire Insurance Company, ECF Nos. 283 and 289, in Civil Action Number 09-1014, and the motions to dismiss on grounds of forum non conveniens filed by defendants Faraday Reinsurance Co. Ltd., General Star International Indemnity International Indemnity Ltd., HDI-Gerling Industrie Versicherung AG, ACE European Group Ltd., Portman Insurance Ltd., QBE Insurance Ltd., Swiss Re Europe S.A., and New Hampshire Insurance Company, ECF Nos. 265, 266, 269, and 273, in Civil Action Number 11-247, **IT IS HEREBY ORDERED** that all those motions are denied with prejudice.

June 21, 2012                                   By the court,
                                               /s/ Joy Flowers Conti
                                               Joy Flowers Conti
                                               United States District Judge